Raymond R. JOYCE

v.

Anthony J. CELEBREZZE, Secretary of Health, Education & Welfare.

Civ. A. No. 933.

United States District Court
W. D. Virginia,
Abingdon Division.

Dec. 14, 1962.

S. W. Coleman, Jr., Gate City, Va., for plaintiff.

H. Garnett Scott, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This suit was instituted by Mr. Joyce to review and reverse a final decision of the Secretary of Health, Education and Welfare which denied the plaintiff's claim to disability benefits and the establishment of a period of disability under the Social Security Act.

To be entitled to the establishment of a period of disability and disability benefits under the Act, one must be disabled as that term is defined in the Act. So far as material in this case the term "disability" is defined in § 216(i) (1) as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *."

It is conceded by all concerned that the plaintiff suffers to a certain extent from shortness of breath due to fibrosis and emphysema of the lungs. The question is whether this difficulty is so serious as to disable him within the meaning of the foregoing definition.

There is ample evidence upon which the Secretary might have decided that the plaintiff was so disabled. Dr. Donald W. Bales in a report of June 21 1955 stated that "patient is totally and permanent-ly disabled for employment under ordinary working conditions as his disease is aggravated by dust or uncontrolled temperatures." Dr. James E. Shaw in a report dated November 19 1956 said, "The patient has a chronic pulmonary fibrosis which is disabling on minimal physical exertion." Dr. S. E. Williams in a report dated December 6 1956 comes to the same conclusion and says, "He should be considered totally and permanently disabled." Another report from Dr. Bales dated December 10 1956 repeats his statement quoted above. Dr. Shaw, in another report dated September 18 1959, says the plaintiff "is totally disabled from gainful employment."

Dr. John R. McDonough in a letter of September 23 1959 says:

"In May 1959 he was placed on total and permanent disability retirement. He will not improve, and his general condition has steadily worsened. I do not believe he is capable of performing any gainful work."

And finally Dr. Bales again and Dr. John S. Powers in a joint report state:

"Patient is unable to engage in any physical activity * * * Patient has acute dyspnea upon exertion * * * Patient states that even the slightest activity results in dyspnea."

On the other hand there is evidence to the contrary and the Act provides in § 205(g) that:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The Secretary has found as a fact that Mr. Joyce is not disabled within the meaning of the Act and I think there is ample evidence in the record to support that finding under the foregoing rule.

Under date of January 18 1958 Dr. William F. Schmidt reported as follows:

"This gentleman has a restrictive and obstructive pulmonary defect, which would make it very difficult

for him to do any type of heavy manual labor. He could do work, if it were not associated with a full eight hour's heavy work. He is probably permanently disabled by his fibrosis and emphysema * * *

"This man is a relatively young man and could probably be re-job trained for some other type of work."

Under date of February 29 1960 Dr. Schmidt made another report in which he concluded that the plaintiff "has a minimal disability. Suggest he be introduced to the oral bronchodilator vasoconstrictive drugs plus expectorants. Breathing exercises to utilize his diaphragm more adequately."

Under date of December 15 1960 Dr. William H. Anderson reported that "the maximum breathing capacity was within the range of normal".

Under date of September 25 1961 Dr. Marshall D. Hogan made a report from which I extract the following quotations:

" * * * The most noticeable thing about this patient was his shortness of breath on getting up from his seat in the waiting room and walking into the interview room. This distance is less than six feet. Though this may be unjust to the patient, it was impossible not to feel that this peculiar panting was completely an act, whether consciously or subconsciously so. To be more specific, the patient, after this negligible walk of less than six feet, sat in a comfortable chair. He began to pant like a birddog after a hard days run. This then gave way to gasps. However when his attention was sharply distracted, the panting and gasping suddenly ceased and only returned on his leaving the interview room. It was very difficult indeed not to have the impression that this was an act, and not a very convincing act, whether consciously or subconsciously put on.

*   *   *   *   *   *

" * * * He gives a history of the gradual onset of this shortness of breath increasing until, in 1953, he left work for good. Neither the excellent medical department of the Tennessee Eastman nor, apparently, anyone else can find organic support for his condition.

*   *   *   *   *   *

"The psychiatric diagnosis is that of (1) passive dependent character and behavior disorder, chronic, moderate and (2) psychophysiological reaction, chronic, severe, cardiovascular type. Neither of these nor the combination thereof are in any way disabling. They do, however, provide a very comforting, ready and staunch crutch for a man who appears to have elected to retire at forty-four from gainful employment and he has been using it to the hilt for the past eight years."

Finally there is another report from Dr. Schmidt dated September 25 1961 in which he said:

"He is less symptomatic than he was on the previous exam in 1960."

(It will be remembered that Dr. Schmidt had reported "a minimal disability" in his previous report.)

Again quoting Dr. Schmidt:

"GENERAL APPEARANCE: He is an alert, agile white male in no acute distress * * *

*   *   *   *   *   *

"IMPRESSION: 1. Chronic Bronchitis.
2. Pulmonary Fibrosis and Emphysema — minimal.
3. History of recurrent symptomatic peptic ulcer under adequate therapy.

"COMMENT:

"Since 1958 he is a little more symptomatic than he was previously. His exam is essentially unchanged and his spirographic

lung function remains stable and somewhat better than it was on previous exam.

"He shows no evidence of arterial desaturation at this time, clinically * * * "

In view of the above quotations it hardly needs to be said that these reports constitute substantial evidence in support of the Secretary's finding and it therefore must be affirmed.

An order will be entered accordingly.